HAZEL PARK RACING ASSOCIATION, INC. *v.*
DEPARTMENT OF AGRICULTURE

1. APPEAL AND ERROR—COURT OF CLAIMS—STANDARD OF REVIEW.
   An appellate court will not overturn the findings of the Court of Claims unless they are clearly erroneous.

2. APPEAL AND ERROR—CONCLUSIONS OF TRIAL COURT—HORSE RACING—SUPPLEMENTAL PURSES.
   Finding that a letter from the Director of Agriculture to a racing association stating "Thank you for submitting the list of Michigan-bred races and the appropriate winning horses"

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 774.
[2, 3] 38 Am Jur 2d, Gambling § 265.

constituted an approval of the supplemental purses paid to the owner of the winning horses was not clearly erroneous where supplemental purses had been approved and the racing association later fixed lower supplements, the ones approved by the letter.

3. Administrative Law—Publication of Procedures—Horse Racing—Supplemental Purses.

A letter from the Director of Agriculture to a racing association stating that he had reviewed the conditions, purses, and supplements paid in races exclusively for Michigan-bred horses, that these records appeared satisfactory, and that the racing association's letter containing the figures was being sent back for signature pursuant to procedures set forth in a letter sent by the director a month before the association's letter was reasonably interpreted by the trial court to constitute full and unequivocal approval of the race supplements where the procedures mentioned were of no force or effect because they were not published as required by statute (MCLA §§ 24.74, 431.31 *et seq.*).

Appeal from Court of Claims, William John Beer, J. Submitted Division 2 April 1, 1971, at Detroit. (Docket No. 9155.) Decided April 22, 1971.

Complaint by the Hazel Park Racing Association, Inc. against the Department of Agriculture for reimbursement for supplemental purses paid to winners of exclusive Michigan-bred races. Judgment for claimant. Defendant appeals. Affirmed.

*Bellanca & Beattie,* for claimant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General and *Franklin J. Rauner,* Assistant Attorney General, for defendant.

Before: J. H. Gillis, P. J., and Fitzgerald and T. M. Burns, JJ.

Fitzgerald, J. This is an appeal from the Court of Claims after a judgment for the claimant in the

amount of $14,700, representing supplemental purses paid by the claimant to winners of exclusive Michigan-bred races in July 1966.

MCLA § 431.31 *et seq.* (Stat Ann 1970 Cum Supp § 18.966[1] *et seq.*) provides for state supplements to be paid to thoroughbred racing associations to supplement the purses for races exclusively for Michigan-bred horses. The funds come from the state's share of horse-racing income. Provision is also made for breeders' awards.

Pursuant to this legislation, 1954 AACS, R 285-.807.1 was adopted and published. Generally, this regulation sets forth eligible races, provides for allocation of funds for the races as designated by the Director of Agriculture, and reimbursement by the director of any eligible race association that pays out total purses (including supplements) to the owners of winning horses.

It appears that the claimant paid out the following supplements in July 1966 and then sought reimbursement from the state.

| 1966 | Sixth | Book | July | 1, 1966 | $ 600 | |
|------|-------|------|------|---------|-------|-----|
| "    | "     | "    | July | 5, 1966 | 1,200 | $ 1,800 |
| "    | Seventh | Book | July | 6, 1966 | 1,400 | |
| "    | "     | "    | July | 7, 1966 | 1,000 | |
| "    | "     | "    | July | 8, 1966 | 1,100 | |
| "    | "     | "    | July | 9, 1966 | 2,000 | |
| "    | "     | "    | July | 11, 1966 | 1,100 | |
| "    | "     | "    | July | 12, 1966 | 900 | |
| "    | "     | "    | July | 13, 1966 | 800 | |
| "    | "     | "    | July | 14, 1966 | 800 | |
| "    | "     | "    | July | 15, 1966 | 1,000 | |
| "    | "     | "    | July | 16, 1966 | 2,000 | |
| "    | "     | "    | July | 18, 1966 | 800 | 12,900 |

$14,700

The issue in this case is whether the state, through the Director of Agriculture, approved the supplements, thus entitling claimant to be reimbursed.

On June 1, 1966, defendant sent a letter to claimant setting forth certain steps that were necessary to get approval of supplemental payment schedules. However, as the trial court found, it does not appear that defendant used the correct procedure required by MCLA § 24.74 (Stat Ann 1969 Rev § 3.560[10]), to make these rules effective. Specifically, it does not appear that the proposed requirements were published in the Administrative Code so as to make them effective. Thus, the question is really whether or not the defendant approved the supplemental payments to claimant under 1954 AACS, R 285.807-.2B, which provides:

"The allocation of funds for said races and the dates and track whereat said races are to be run shall be designated by the director of agriculture with the advice of the Michigan racing commissioner, representatives of the licensed thoroughbred racing associations and the Michigan thoroughbred breeders' association."

The trial court found that the defendant did, in fact, approve the supplements paid out by claimant and thus must reimburse claimant for the contested amount.

Two of the races in question (July 1 and July 5, 1966) were in the sixth condition book (race program) and the rest of the races were in the seventh condition book. To avoid confusion, each condition book will be dealt with separately in this opinion.

As to the two races in the sixth condition book, defendant contends that the supplemental payments in these two races were never approved; thus, claimant cannot seek reimbursements for the $1,800 paid.

On June 24, 1966, claimant sent a letter to defendant, which defendant received on June 27, 1966, concerning the supplemental purses to be paid during the sixth condition book. This included the races run on July 1 and 5, 1966, which are at issue here. This letter listed the supplemental purses to be paid on July 1, 1966, as $2,100 and the supplemental purse on July 5, 1966, as $2,500.

On June 30, 1966, defendant wrote to claimant concerning these races and stated the following:

"I am approving this schedule as per agreement reached and contingent upon available funds to supply these purses."

It would appear that these amounts were thus approved by defendant. However, on June 30, 1966, claimant sent a corrected list of supplemental purses for the races to be run on July 1, 1966, and July 5, 1966. This revised list *lowered* the supplemental purses to be paid on the July 1, 1966, race (from $2,100 to $600) and also *lowered* the supplemental purse to be paid on the July 5, 1966, race (from $2,500 to $1,200).

The next communication concerning these two races occurred on July 6, 1966, in which claimant wrote to defendant and listed the races that had been run in the sixth condition book, including the races on July 1 and July 5, 1966.

On July 13, 1966, defendant then wrote to claimant and stated:

"Thank you for submitting the list of Michigan-bred races and the appropriate winning horses (concerning the sixth condition book)."

The record does not indicate an approval by the defendant of the *reduction* in the supplements of July 1 and July 5, 1966, although a higher supplement was earlier approved.

The Court of Claims ruled that defendant "acknowledged said revised list of supplements without dissent" in the July 13, 1966, letter. This Court cannot overrule the findings of the Court of Claims unless we deem them to be clearly erroneous, GCR 1963, 517.1. The record does not indicate, nor do the arguments of defendant persuade us, that the findings of the Court of Claims concerning the races in the sixth condition book were clearly erroneous.

Concerning the races held in the seventh condition book, defendant argues that the supplements were not approved because claimant did not follow the proper procedure as set down by defendant in his letter of June 1, 1966.

Claimant counters that these supplements were approved by letter from defendant dated July 7, 1966, and that the requirements promulgated by defendant in his June 1, 1966, letter were of no force and effect because he did not comply with MCLA § 24.74 (Stat Ann 1969 Rev § 3.560[10]), which requires publication. The amount in issue here is $12,900.

On June 30, 1966, claimant wrote to defendant and listed the races and supplements to be run and paid from July 6 through July 17, 1966, the seventh condition book.

On July 7, 1966, defendant responded to claimant's letter of June 30, 1966, and the interpretation of this letter is the crux of this lawsuit. The text of the letter is:

"Mr. Richard A. Connell, President
Hazel Park Racing Association, Inc.
1650 East 10 Mile Rd.
Hazel Park, Michigan
"Dear Mr. Connell:
  "Thank you for your letter of June 29, which pre-

sented statistics relative to the program at Hazel Park.

"I have reviewed the conditions, purses and supplements pertaining to the seventh condition book and it appears to be satisfactory. I am returning it to you for the appropriate signatures as per my letter of June 1, 1966, regarding the procedure for submitting condition books for approval.

"Sincerely,
B. Dale Ball, Director

"BDB:REM:AP
Enclosures"

The Court of Claims found this letter to constitute "full and unequivocal approval" of the races and supplements listed by claimants in its June 30 letter.

At first blush, it is difficult to see how this letter could constitute "full and unequivocal approval" of the race supplements, especially in light of the last sentence, which says:

"I am returning it to you for the appropriate signatures as per my letter of June 1, 1966, regarding the procedure for submitting condition books for approval."

However, as the Court of Claims noted, it does not appear that the procedures set up by the defendant in the letter of June 1, 1966, were of any force or effect because they were not published as required by MCLA § 24.74 (Stat Ann 1969 Rev § 3.560[10]). If these procedures were not in effect, the question then becomes, did the defendant give approval in his letter of July 7, 1966?

Testimony given below appears to shed some light on the matter. During the proceedings on December 11, 1969, Ralph E. Morrow, the deputy director of a service bureau of the Michigan Department of Agriculture, who assists in the state's supplemental

program, testified in the following manner regarding the meaning of the letter.

"It appeared that the conditions and the purses, and the *supplements pertaining to the seventh book appears to* be satisfactory." (Emphasis supplied.)

While this was qualified by the later statement in the letter that it was being returned for appropriate signatures, the required procedures were of no force and effect because they were not published as required by MCLA § 24.74 (Stat Ann 1969 Rev § 3.560[10]). Therefore, if the procedure was of no force and effect, a reasonable interpretation of the letter is that it is, in fact, approval on the part of the director. This interpretation by the Court of Claims is not clearly erroneous so as to require our reversal. GCR 1963, 517.1.

Affirmed. No costs.

All concurred.